**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| Kristine Chevannes,<br><br>                              Plaintiff,<br><br>               -v-<br><br>ProHEALTH Care Associates LLP,<br><br>                              Defendant. | 2:22-cv-2475<br>(NJC) (AYS) |

**MEMORANDUM AND ORDER**

NUSRAT J. CHOUDHURY, United States District Judge:

Before the Court is Defendant's Motion for Reconsideration of the Court's February 13, 2026, Memorandum and Order. (Mot. Recons., ECF No. 52; Mem. Supp. Mot. Recons. ("Recons. Mem."), ECF No. 52-1.) Defendant makes three arguments: (1) the Court erred in denying summary judgment on claims under the New York Labor Law, which Plaintiff purportedly abandoned by not opposing summary judgment on these claims in her opposition brief, (2) the Court improperly denied summary judgment as to Plaintiff's retaliation claim, and (3) the Court should clarify its findings related to claims that this Court denied without prejudice, particularly the New York state law claims. (Recons. Mem.)

The Motion for Reconsideration was filed on February 27, 2026—14 days after this Court's ruling denying Defendant summary judgment on the retaliation claims based on Plaintiff's complaint to ProHEALTH Human Resources Generalist Haley Breen. Therefore, the Motion for Reconsideration is timely. *See* Local Rule 6.3.

However, having carefully reviewed Defendant's Motion, it is denied in its entirety for the following reasons.

**LEGAL STANDARDS**

"A motion for reconsideration should be granted only when the defendant identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013). In other words, "reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked . . . that might reasonably be expected to alter the conclusion reached by the court." *Commerzbank AG v. U.S. Bank, N.A.*, 100 F.4th 362, 377 (2d Cir. 2024).

**DISCUSSION**

**I.    Defendant's Violation of this Court's Order**

Defendant has violated this Court's Order requiring the parties to participate, in good faith, in an in-person settlement conference before the assigned magistrate judge before resolution of a motion for summary judgment. (*See* Min. Entry, Sept. 23, 2025; Individual Rule 5.1.1.) On September 23, 2025, after closely reviewing the parties' submissions and hearing oral argument on the Motion for Summary Judgment, the Court provided guidance to the parties on the strengths and weaknesses of their arguments in support of and in opposition to the motion and referred them to a settlement conference before the assigned magistrate judge in light of its "broad authority to compel participation in mandatory settlement conference." *United States v. U.S. Dist. Ct. for N. Mariana Islands*, 694 F.3d 1051, 1057 (9th Cir. 2012); *see also Bulkmatic Transp. Co. v. Pappas*, No. 99-cv-12070, 2002 WL 975625, at *2 (S.D.N.Y. May 9, 2002) ("[I]t is well established that a court can require parties to appear for a settlement conference, and impose sanctions pursuant to Rule 16(f) if a party fails to do so." (collecting cases)).

2

However, rather than comply with this Court's Order, Defendant demonstrated disrespect for the assigned magistrate judge, Plaintiff, and this Court in failing to participate in good faith in the January 21, 2026 settlement conference. (Elec. Order, Jan. 21, 2026.) Accordingly, in line with the issues that I raised during oral argument on September 23, 2025, I set forth my analysis denying Defendant's Motion for Summary Judgment with respect to Plaintiffs' retaliation claim based on the Breen complaint, denied *without prejudice* the remainder of the motion, and ordered parties with settlement authority for both parties to appear before this Court for a conference. (ECF No. 48.) The parties have filed letters indicating that such persons will appear at the March 4, 2026 conference. (*See* ECF Nos. 51, 53.) At the conference, this Court will address a schedule to advance the just, speedy, and inexpensive resolution of this action, in line with the directives of Rule 1, Fed. R. Civ. P.

It is of note that since October 2025, this Court has required all parties in civil actions to participate in good faith in a settlement conference before the assigned magistrate judge prior to any request for a conference in anticipation of filing a summary judgment motion. *See* Individual Rule 5.1.1. Defendant may not renew any portion of the summary judgment motion that was denied without prejudice without first complying with this Court's directive to participate in good faith in an in-person settlement conference before the assigned magistrate judge. *See id*.

Defendant complains that this Court's February 13, 2026 Order purportedly failed to deem certain New York Labor Law claims by Plaintiff abandoned or to explain the status of Plaintiff's other New York state law claims. However, Defendant fails to point to any intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice in the Court's ruling denying *without prejudice* Defendant's motion for summary judgment on claims other than Plaintiff's retaliation claims

3

based on the Breen complaint (which are addressed separately below). *Kolel Beth Yechiel Mechil of Tartikov*, 729 F.3d at 104. The Court has not issued a merits ruling on Defendant's argument that Plaintiff purportedly abandoned New York Labor Law claims by not by not opposing summary judgment on these claims in her opposition brief. Nor has the Court ruled on the merits of Defendant's request for summary judgment on the federal hostile work environment or failure to accommodate claims. The Court will provide guidance to the parties at the March 4, 2026 conference concerning a schedule for any renewed motion for summary judgment.

**II.      The Court did not err in Denying Summary Judgment on the Retaliation Claim**

The Defendant's Motion for Reconsideration of the denial of summary judgment on the retaliation claim stemming from the Breen Complaint fails to show "an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice." *Kolel Beth Yechiel Mechil of Tartikov*, 729 F.3d at 104. Defendant argues that I committed clear error warranting reconsideration (1) in holding that a four-month gap alone establishes prima facie causation, and (2) in finding that a jury could reasonably conclude pretext. (Recons. Mem. at 5–6.) Defendant is wrong on both counts.

**A. Causation**

With respect to causation, Defendant objects to my characterization of *Banks v. General Motors, LLC*, 81 F.4th 242, 277 (2d Cir. 2023). As I explained in the order denying summary judgment,

> The Second Circuit has made clear that "[w]hile [it] has not drawn a bright line defining the outer limits beyond which a temporal relationship is too attenuated to establish causation . . . we have previously held that a period of several months can demonstrate a causal connection between the protected activity and the alleged adverse action."

Mem. & Order at 2–3, ECF No. 48; *see also Banks*, 81 F.4th at 277 (citing *Gorman-Bakos v. Cornell Coop. Extension of Schenectady Cnty.*, 252 F.3d 545, 554 (2d Cir. 2001) for the

4

proposition that "four months between employment action and protected activity was sufficient to support an inference of a causal connection"). Defendant argues that "as ProHEALTH explained in its Reply, *Banks* involved 'strong direct evidence' of retaliatory animus and did not treat direct temporal proximity as the sole basis for finding causation." (Recons. Mem. at 5.) However, the relevant reasoning from *Banks* did not turn on the retaliatory animus in that case. To the contrary, the Second Circuit in *Banks* first set out the rule I relied upon in denying summary judgment before then going on to explain, "[w]here temporal proximity is not the only evidence that bears on a causal connection, we have recognized that the lapse in time between the protected activity and adverse action can be longer." *Banks*, 81 F.4th at 277–78. On that basis, the Second Circuit concluded that the longer six-month gap at issue in *Banks* was sufficient to establish causation where there was *also* direct evidence of a causal relationship. *Id.* at 278. Thus, under *Banks*, 81 F.4th at 277, and *Gorman-Bakos*, 252 F.3d at 554, my reasoning that four months between employment action and protected activity was sufficient to raise a question of fact as to a causal connection was sound.

On reconsideration, Defendant cites two unpublished Second Circuit decisions for the proposition that a four-month gap, standing alone is not enough to establish causation. (Recons. Mem. at 5–6 (citing *Gehlaut v. N.Y.C. Dep't of Educ.*, No. 24-1741, 2025 WL 2586770, at *2 (2d Cir. Sept. 8, 2025) (summary order) and *Sealy v. State Univ. of N.Y. at Stony Brook*, 834 F. App'x 611, 614 (2d Cir. 2020)).) However, Defendant fails to satisfy its burden on reconsideration to point to "*controlling* decisions . . . expected to alter the conclusion reached by the court." *Commerzbank AG*, 100 F.4th at 377 (emphasis added). As I explained in the Order denying summary judgment on the retaliation claim, "Defendant ha[d] not identified *any circuit authority* indicating that four months between protected activity and an allegedly retaliatory

5

action is too attenuated to support the causation prong of the prima facie case." (Mem. & Order at 3.) In fact, in its Motion for Summary Judgment, Defendant failed to cite *any* decisions whatsoever providing guidance as to how courts had considered causation based on temporal proximity following *Banks*. (Def.'s MSJ Mem. at 19–20, ECF No. 38-1; Reply at 6, ECF No. 40.) Moreover, all *Gehlaut* held is that close temporal proximity "*usually means* less than three *or four months*." 2025 WL 2586770, at *2 (emphasis added). Here, the four-month temporal relationship is near the outer limit in *Gehlant* and is sufficient to raise a material question of fact as to causation in light of the other record evidence discussed in the portion of the Order that concludes that the record presents a question of fact as to pretext. (*See* Mem. & Order at 4.)

Nor does *Sealy* represent controlling law overlooked by this Court. First, notwithstanding Defendant's failure to cite *Sealy* in its summary judgment submission, this non-precedential Second Circuit decision pre-dates *Banks*, a precedential decision, which I considered in denying summary judgment on the retaliation claim based on the Breen Complaint. (*See* Mem. & Order at 2.) Moreover, in *Sealy*, the Second Circuit concluded that the challenged conduct took place "*at least* four months, and as many as eleven months, after any assertedly protected activity," relying primarily upon *Hollander v. American Cyanamid Co.*, 895 F.2d 80, 85–86 (2d Cir. 1990), where the Second Circuit concluded that a three-month gap was too attenuated. *Sealy*, 834 F. App'x at 614 (emphasis added). However, in its later decision in *Gorman-Bakos*, 252 F.3d 545, the Second Circuit surveyed authority on this issue, including *Hollander* and decisions of other Circuits, and held that although it "need[ed] not nail down the elusive outer limit" after which a plaintiff cannot indirectly establish a causal connection by temporal proximity, four months "is sufficient to support an allegation of a causal connection strong enough to survive a

6

summary judgment motion." *Id.* at 555. Accordingly, the causation analysis in my Order adhered to Second Circuit precedent.

Finally, Defendant argues that I did not address the "absence of any evidence that Cintron or Hartman . . . knew about Plaintiff's alleged July 2020 complaint" and that "[c]ausation requires proof that a *decisionmaker* had direct or circumstantial *knowledge* of the protected activity." (Recons. Mem. at 6 (citing *Henry v. Wyeth Pharms., Inc.*, 616 F.3d 134, 147–48 (2d Cir. 2010).) However, in *Henry*, the Second Circuit held that because "[n]either this nor any other circuit has ever held that, to satisfy the knowledge requirement, anything more is necessary than general corporate knowledge," a plaintiff is *not* required to "show that *the particular individuals* who carried out an adverse action *knew of the protected activity*." *Henry*, 616 F.3d at 147–48 (emphasis added). To the extent *Henry* requires a showing of circumstantial knowledge on the causation prong, such circumstantial evidence is satisfied by temporal proximity. *Id.* (citing *Gorman-Bakos*, 252 F.3d at 545 for the rule that causation can be established by temporal proximity).

## B. Pretext

With respect to pretext, Defendant makes three arguments: (1) the Order did not "address the undisputed evidence directly contradicting [Plaintiff's] self-serving testimony" that she submitted leave paperwork to FMLASource, (2) the Order "did not address critical undisputed facts demonstrating that Plaintiff had already stopped communication with ProHELATH and FMLASource" when Cintron mailed her a letter alerting her of the possibility of termination, and (3) the Order did not address that Plaintiff had "adduced no evidence that Cintron or Hartman were aware of [Plaintiff's] purported complaint to Breen in July 2020" at the pretext prong. (Recons. Mem. at 7–9.) Defendant is wrong on all three fronts.

7

First, although Plaintiff's testimony may be "self-serving," it is for the jury to assess the credibility of her testimony that she applied for leave in light of the absence of corroborating documentation and the representations made by FMLASource that it had no record of any communication from Plaintiff for a certain period of time. It is true that "conclusory, unsupported assertions . . . are insufficient to cast doubt on the otherwise undisputed evidence in the record," (Recons. Mem. at 7), but Plaintiff's testimony that she recalled making a leave request to FMLASource is not rendered conclusory just because neither she nor FMLASource possess documentation of the leave request. To the contrary, Plaintiff testified to the sequence of events surrounding the request. (Pl. Dep. 245:18–19, 246:25–247:3 (Plaintiff testifying that she "believe[s] [she] called FMLASource via the phone" and "when they suggested the ADA leave, [she] did go ahead and try to apply for that"; *id.* 247:5–6 (testifying that "I believe they sent me paperwork and I filled it out and sent it back"); *id.* 247:22–248:2 (responding to a question about whether the paperwork requesting ADA leave exists by testifying, "I believe so, but, again, that was such a time where I was on medications. I really don't recollect every detail").)

Second, Defendant is mistaken that the Order overlooked several communications from ProHEALTH and FMLASource appearing at paragraphs 136, 140, and 141 of Defendant's 56.1 Statement. (*See* Recons. Mem. at 7–8.) Those paragraphs discuss the email requiring that Plaintiff apply for leave with FMLASource and the November 10, 2020 letter that are addressed in the portion of the Order explaining the denial of summary judgment on the retaliation claim. (*See* Mem. & Order at 4; SUMF ¶¶ 136, 140–41.)

Finally, although there is no direct evidence that Cintron or Hartman were aware of the Breen Complaint, I explained that the following facts *alongside* temporal proximity were enough to satisfy but-for causation when viewed in the light most favorable to the non-moving party:

although Plaintiff had told Cintron that she had been in and out of the hospital, Cintron only notified Plaintiff of the deadline to respond to ProHEALTH by: (1) calling Plaintiff from a blocked number; and (2) mailing Plaintiff a letter that did not arrive until November 14, 2020—two days before the November 16, 2020 deadline for Plaintiff to contact Cintron about her leave request.

(Mem. & Order at 4.) Plaintiff may have been discharged from the hospital already, but the critical fact here is what *Cintron knew* at the time. Because she had been told that Plaintiff had been in and out of the hospital, a reasonable jury could conclude, construing all facts in the light most favorable to Plaintiff, that the termination for job abandonment was pretext.

## CONCLUSION

Accordingly, for the reasons set forth above, Defendant's Motion for Reconsideration (ECF No. 52) is denied.

Dated: Central Islip, New York
       March 2, 2026

                                 */s/ Nusrat J. Choudhury*
                                   NUSRAT J. CHOUDHURY
                                   United States District Judge